Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Alison L. Gregoire
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No. 2:20-CR-00146-WFN-1 |
|---|---|
| Plaintiff, | |
| v. | Sentencing Memorandum |
| JAIDEN GYVAN PETERSEN, | |
| Defendant. | |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Alison L. Gregoire, Assistant United States Attorney for the Eastern District of Washington, submits the following sentencing memorandum:

I.     STATEMENT OF FACTS

FBI received a CyberTip from Snapchat indicating child pornography had traveled across their servers pertaining to a specific IP address in Eastern Washington. The Snapchat account residential logins were traced, via IP address, to a specific address on Cherry, in Spokane Valley, Washington. The user of the account was subsequently identified as JAIDEN GYVAN PETERSEN. When the FBI received and executed the search warrant at Cherry, they found the home was that of Jaiden PETERSEN'S brother. The brother explained the SnapChat user

Government's Sentencing Memorandum - 1

was Jaiden PETERSEN who had been living there, but Jaiden PETERSEN had moved in a few months prior with their other brother who resided on Glass Avenue in Spokane.

A search warrant was subsequently obtained for the Glass Avenue address where agents found a PlayStation, used girls' underwear (ranging from 28-pound size to 83-pound size), a thumb drive and a cell phone. Living at the house were Jaiden PETERSEN, his brother, and his brother's partner as well as their children to include their Minor 1, whom Jaiden PETERSEN had babysat.

Jaiden PETERSEN was interviewed at the time of the search warrant. When he was originally approached, he was told not to touch his phone, and he immediately grabbed it and turned it off. He was then handcuffed. He was taken to an FBI vehicle, unhandcuffed and Mirandized.

Jaiden PETERSEN admitted the subject account was his noting his Snapchat ID was petersenjaiden and his e-mail was jgpetersen00@gmail.com, both of which were listed in the CyberTip. Jaiden said he got his child pornography from internet Google searches. He stated he started viewing underage sexual images at about age 12 and continued to the present. PETERSEN had the known child pornography series "Ukrainian Angels." He had downloaded child sex images at his mother's address on Nora, his brother's address at Cherry, and his current brother's residence on Glass.

All of PETERSEN's devices were reviewed forensically. The FBI found at total of over 1,000 child pornography images and 10 child pornography videos pursuant to the review. Of note, three images were of a local production victim (victim of a separate defendant) that were traded directly with PETERSEN. Other images included urination and child bondage. The FBI also located other child pornography images Defendant had produced himself, as detailed herein.

Government's Sentencing Memorandum - 2

Minor 1

A keyring thumb drive in PETERSEN's belongings contained images of PETERSEN and his relative (specific relationship will not be detailed herein) Minor 1 (born December 2009) as well as Minor 1 by herself. The images included close ups depictions of her vagina, a penis touching her cheek, a penis over her head, and ejaculate on her face. Of note, PETERSEN has a skin tag visible in the photos. The dates of production were all in August and September 2016.

Minor 1's parents were interviewed and identified Minor 1 in the photos. They also identified the underwear located as Minor 1's. PETERSEN was seventeen years old when he produced the images; the production was not charged in the indictment. The child molestation of Minor 1 is being charged by Spokane County, as was detailed in the global plea agreement.

Minor 2

Defendant's then underage girlfriend, Minor 2 (born 2002), was located and interviewed by the FBI. She explained she communicated with Jaiden PETERSEN over Facebook Messenger and Snapchat, since she was 14 years old and that he knew her true age. Minor 2 described her relationship with PETERSEN as not dating, but involving sex and the sending, at his request, of sexual images of herself. The images included breasts, nudes, genitals, and masturbation, which were sent over Snapchat. From ages 14 to 17 she created sexual images of herself, each time at PETERSEN's request. She estimated sending 65 or more pictures of herself (meeting the federal definition of child pornography) to PETERSEN. She sent, on average, two images or videos per week.

Minor 3

PETERSEN's Google account (associated with his e-mail) was searched and several potential victims emerged from his "Google Photos," one of which was

Government's Sentencing Memorandum - 3

Minor 3 (born December 2005).

Minor 3 was interviewed and stated she had met PETERSEN on Xbox live. Minor 3 identified several photos of herself that she had sent PETERSEN via Snapchat. She detailed where the photos were taken, that she was depicted in the photos, and that the photos were taken at Defendant's request. The dates available for the photos show they were produced between September and October 2019, when Minor 3 was 13 years old. The photos included masturbation and lascivious exhibition of the genitals.

PETERSEN knew Minor 3's age and minor status. He told her he was more than 7 years older than her and he could get in trouble for talking to her. Jaiden PETERSEN stated he was "20 something" and Minor 3 told him her true age at the time, 13. He knew she was in Spokane and attending middle school because he commented that he had gone to the same middle school. He asked to meet her, but Minor 3 refused. PETERSEN told her about the sexual interest he had in his younger "cousin," and explained how he had touched his penis to her lips (Minor 1).

PETERSEN sent penis images and masturbation videos to Minor 3 over Snapchat. Minor 3 saw a poster of females sitting down showing their backsides on the wall behind PETERSEN in the images. This same poster can be seen in search warrant photos on the wall by PETERSEN'S computer and in his room.

PETERSEN sent child pornography to Minor 3 through Snapchat three times. One looked like a seven-year-old "doing stuff." He said he liked it. One time he sent an image of his "cousin" (later determined to be Minor 1). She was sleeping and he lifted her blanket exposing her "private parts."

The FBI located 416 images of Minor 3 in PETERSEN's digital accounts, approximately 200 of which would qualify as child pornography.

//

Government's Sentencing Memorandum - 4

## II. SENTENCING CALCULATIONS

The government agrees with United States Probation that Defendant's Total Offense Level is 43 (it is 44, but is reduced to 43 by operation of USSG Chapter Five, Part A (comment n.2)); his Criminal History Category is I.  The resulting range per the Sentencing Guidelines Chart is life.  However, because of the statutory maximum sentences for Defendant's Offenses, the resulting guideline range is amended to 720 months or 60 years—the statutory maximum.

## III. SENTENCING WITNESSES

The government is unable to give the Court a precise list of who will choose to speak to the Court and exactly for how long.  The government believes its portion of the sentencing will take 35 minutes, composed of 20 minutes for government argument and 15 minutes for any victims who may wish to speak.  The government does not opine as to how long the defense's presentation will take.

At least one of Defendant's victims has indicated an intent to be present and address the Court.  The United States is still following up with the other victims.

## IV. SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The circumstances of the offense involve Defendant's using a position of trust with his brother to produce child pornography of a relative—child pornography he subsequently distributed.  The circumstances of the offense involve Defendant producing child pornography of two other minor girls.  The circumstances of the offense involve Defendant's admitted viewing child pornography since he was twelve years old up until two or three days prior to being contacted by law enforcement.  ECF No. 60 at ¶ 15.  He would receive, possess and distribute the same on Snapchat.  *Id*. Defendant was found to be in possession

Government's Sentencing Memorandum - 5

of over 1,000 series images or child pornography images he did not produce. ECF No. 60 at ¶ 18.

Defendant had maintained a sexual interest in children, by his admission, since he was 12. ECF No. 60 at ¶ 15. He had a sexual interest in his young relative, with whom he lived at various times. This was long held—he maintained his young relative's used underwear and had maintained 18 pair ranging in size/age from 2 to 10. ECF No. 60 at ¶ 16. Defendant produced child pornography of the minor, some of which he was in. He was identified by a skin tag on his front right belt line. ECF No. 60 at ¶ 19.

Images Defendant produced of Minor Victim 1 included 23 images of child pornography and others that indicate Defendant's sexual intent to include images of the child that had Minor 1's face edited onto a child pornographic image in which the prepubescent female was naked with her legs spread toward the camera, an image of Minor 1 in which Defendant's penis was edited onto her image, an image of Defendant's erect penis out of his pants above the child while she did homework unaware on the floor. ECF No. 60 at ¶ 73. Defendant also had a series of images were he presses his erect penis against the sleeping child. ECF No. 60 at ¶ 76. He also has images of Minor 1's unclothed groin. ECF No. 60 at ¶ 77.

Defendant also produced images of Minor Victim 2. When Minor Victim 2 was interviewed she indicated her relationship with Defendant started when she was 14; he knew she was 14 as he had asked her age and stated he really liked that she looked so young. ECF No. 60 at ¶¶ 23, 24. She said their relationship involved sex and nude photographs since she was that age. *Id.* Defendant would ask for the child pornography to be sent to him via Snapchat—he specifically asked for unclothed photos to include pictures with her vagina, fully nude, of her breasts, and while masturbating. *Id.* Minor Victim 2 sent Defendant what he asked for. *Id.* He also requested she write "Property of Jaiden" on her nude body. *Id.*

Government's Sentencing Memorandum - 6

Defendant also produced images of Minor 3. When Minor Victim 3 was interviewed she identified the child pornography images in Defendant's possession which depicted her. ECF No. 60 at ¶ 27. She said Defendant had requested the images. *Id.* She had produced and sent the child pornography photos of herself to Defendant, at his request, when she was 13 years old, and she had told him she was 13 years old. ECF No. 60 at ¶ 27. Defendant indicated he could get in trouble for talking to her but still asked to meet her. *Id.* He also sent her child pornography on three occasions to include a child pornography if his young relative, Minor Victim 1. *Id.*

All told, Defendant has been engaging with child pornography by receiving and distributing it for years. He has been engaging in production of child pornography for years. He has abused a victim close to him with respect to whom he occupied a position of trust and preyed on additional minor aged victims as well.

The nature and circumstances of the offense are such that the Defendant's actions will continue to impact his young victims and their families—in the case of Minor 1, who is his family as well—forever. This is further evidenced by Minor 2's restitution request for the future counseling it is anticipated she will need as a result of Defendant's actions.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The government asks that the Court sentence Defendant to imprisonment for twenty years. The government asks that the court also order a lifetime of supervised release. Such a significant sentence is necessary to reflect the seriousness of the offense, promote respect for the law and provide just punishment.

Government's Sentencing Memorandum - 7

Defendant's crimes against children, to include against his young relative, are very serious. The gravity of the offenses against Minor 2 is partially demonstrated through the letter from the counselor of the child. The counselor notes he began working with Minor 2 in October of 2021. She has experienced trauma and everything from her family relationships to her own self-esteem has been negatively impacted by this crime. She has expressed homelessness and thoughts of suicide. She feels Defendant tricked and exploited her which has impacted her feelings regarding safety and trust.

Defendant also traded heavily in child pornography and maintained images including child pornography bondage, urination, and bestiality, including a female baby bestiality pornographic image. ECF No. 60 at ¶ 18.

In evaluating the nature and circumstances of the offense, the government asks the Court to consider the victim impact statements from the identified victims in the child pornography Defendant possessed but did not produce. Those victims detail their experience having had child pornography of them produced and disseminated, and their thoughts are instructive as to the impact on Minors 1, 2, and 3, in this case as well.

A victim in a series Defendant possessed notes fear of even having a social media profile picture for fear of being recognized. (statement on behalf of AprilBlonde (April)). The child notes as a result of being notified each time an image is found, "My mom received 22,000 notifications and I had to stop the notifications because it made me have panic attacks." (statement on behalf of AprilBlonde (April)).

Another mother, in a series Defendant possessed, notes having to identify her children in images her husband had created documenting their sexual abuse. (statement on behalf of BluesPink1 (Fiona)). She describes the continued impact as

Government's Sentencing Memorandum - 8

her daughter is suicidal and afraid to even sleep alone. (statement on behalf of BluesPink1 (Fiona)).

In another statement, pertaining to a series Defendant possessed, a victim herself notes how she continues to be impacted knowing, "some sick person is looking at me on the computer every day." (statement on behalf of LeopardTight). She goes on to state something that should be obvious, "I am a real person." (statement on behalf of LeopardTight).

Those children speak to the impact that present in every case of child exploitation: the victims question every subsequent relationship—they distrust everyone. Their parents feel incompetent in failing to protect them. These universal impacts in child exploitation cases are true for the production victims and their families here as well, and the government anticipates they will explain the same to the Court at sentencing.

The damage to the child victims themselves is never fully known at the time of sentencing, in these cases. However, as Minor 2's counselor notes, there will be damage and future attention will be needed with respect to that damage.

Defendant's crimes will certainly continue to impact his victims and their families well after whatever sentence this court imposes has concluded. Given the seriousness of the offense, to promote respect for the law, and to provide just punishment, the government maintains twenty years is appropriate.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Defendant did not choose to stop his criminal behavior. He was stopped when his child pornography trafficking activities came to the attention of law enforcement. Defendant had been ingesting child pornography for years and producing it for years as well. When asked about his young relative, Minor 1, he stated he had not touched her or produced images of her, further remarking, "she

Government's Sentencing Memorandum - 9

makes stuff up."  In fact, of course, it was Defendant who was making stuff up. He did not recognize his misconduct, he did not choose to stop abusing children, he amassed three production victims and many more receipt/distribution series victims before law enforcement stopped him.

Defendant did not stop; he did not have a change of heart or come to realize what he was going would cause irreparable harm to his victims.  Defendant did not stop; he was stopped. Defendant's abuse of children was not a discrete act or a momentary lapse in judgment.  Defendant had been committed to nurturing his sexual interest in children by receiving, distributing, and producing child pornography for years.  Thus, deterrence will certainly be a significant task.

The government is asking for a twenty year term of incarceration. The government, additionally, recommends a lifetime of supervised release.  The government is concerned by the recidivism rate for sex offenders generally. *See United States v. Garner*, 490 F.3d 739, 743 (9th Cir. 2007) ("the particularly high danger of recidivism of sex offenders is well-known"); *Smith v. Doe,* 538 U.S. 84, 104 (2003) ("The risk of recidivism posed by sex offenders is 'frightening and high.'") (quoting *McKune v. Lile*, 536 U.S. 24, 34 (2002)).  Additionally, Defendant committed some of his offenses on a particularly vulnerable, young child with whom he lived and had a trust relationship.  ECF No. 60 at ¶¶ 12, 71 (noting he lived with his brother and his partner and their three children, to include Minor 1 and that he babysat the children).  The government argues he should be under the supervision of a United States Probation Officer for the rest of his life.

   4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

As has been detailed, Defendant's crimes are terribly serious.  Defendant was willing to abuse a young child, with whom he had a trust relationship as well as two other vulnerable, young teenagers.  The public, particularly the young

public, requires protection from Defendant and the United States believes the requested twenty year sentence is appropriate.

    5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

Defendant has not identified any needed educational or vocational training.

    6. <u>The kinds of sentences available.</u>

Defendant is subject to a sentence involving a term of imprisonment. The offense to which Defendant pled guilty carries a mandatory minimum sentence of fifteen years imprisonment.

    7. <u>The kind of sentence contemplated by the Sentencing Guidelines.</u>

The Sentencing Guidelines contemplates a term of imprisonment.

    8. <u>Any pertinent policy statements issued by the Sentencing Commission.</u>

There are no pertinent policy statements in this case.

    9. <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

The government's proposed sentence entails a forty-year downward variance from the guideline range. The government is asking for a sentence that amounts to less than half of the guideline range and maintains its argument for the requested twenty year sentence is well supported. That said, the government believes strongly Defendant, who accepted responsibility, is subject to a sentence similar to others similarly situated. The government maintains the requested twenty year sentence is sufficient, not greater than necessary, and will not generate a sentencing disparity.

    V.    **RESTITUTION, FINES, ASSESSMENTS, AND FORFEITURES**

The Court should impose mandatory restitution and enter a final order of forfeiture as to the property identified in the preliminary order of forfeiture.

Government's Sentencing Memorandum - 11

A.    <u>Restitution</u>

Restitution is mandatory pursuant to 18 U.S.C. §§ 2259 and 3663A. The Court should order that Defendant pay restitution in the full amount sought by the minor aged victim. In addition, the Court should order restitution in the full amounts sought by the victim's parents, who are victims in their own right due to the minor's age. *See* ECF No. 60 at 4 (Defendant stipulates to full restitution for Minors 1, 2, and 3).

At this time, the government has received one restitution request and that pertains to Minor 2. Specifically, the government requests $14,400 for counseling services for Minor 2. The government will provide additional requests of they are received.

VI.    GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the court impose a sentence to twenty years imprisonment on each count to be served concurrently as well as a lifetime term of supervised release. The government also recommends the Court order restitution as set forth herein.

Respectfully submitted this 12th day of April 2023.

                                      Vanessa R. Waldref
                                      United States Attorney

                                      *s/ Alison L. Gregoire*
                                      Alison L. Gregoire
                                      Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Colin Prince

s/Alison L. Gregoire
Alison L. Gregoire
Assistant United States Attorney
United States Attorney's Office
920 W. Riverside Suite 300
Spokane, WA 99210
(509) 353-2767

Government's Sentencing Memorandum - 13